**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 05-1749

---

PORT ERIE PLASTICS, INC.

v.

UPTOWN NAILS, LLC;
LARRY G. KAPFER, JR.;
FRANK GLEESON;
FRANK BRUNO;
AMERICAN ARBITRATION ASSOCIATION

Uptown Nails, LLC; Larry G. Kapper, Jr.;
Frank Gleeson; Frank Bruno,
                                    Appellants

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Civil 03-cv-00370
District Judge: The Honorable Sean J. McLaughlin

---

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2006

---

Before: SCIRICA, Chief Judge, BARRY and FISHER, Circuit Judges

---

(Opinion Filed: March 10, 2006)

---

OPINION

---

BARRY, <u>Circuit Judge</u>

Uptown Nails, LLC, Larry Kapfer, Jr., Frank Gleeson, and Frank Bruno (collectively, "Uptown"), appeal from an order of the District Court ordering arbitration to proceed within the Western District of Pennsylvania. We will affirm.

## I.

Because we write primarily for the benefit of the parties, we recount the facts and procedural history only as they are relevant to the disposition of the issues before us. In the late 1990s, Kapfer, Gleeson, Bruno, and Port Erie Plastics, Inc. formed a limited liability corporation, Uptown Nails, LLC, to acquire, market, and sell cosmetic nails. Port Erie, an injection molded plastics manufacturer, was responsible for manufacturing the cosmetic nails for the corporation. Uptown paid Port Erie for providing these goods. Port Erie was, therefore, both a shareholder of and vendor to Uptown. The rights and duties of the parties to the venture were laid out in an Operating Agreement. The Agreement contained an arbitration provision, which provided as follows:

> 8. <u>Jurisdiction and Venue</u> – Any dispute arising out of this agreement shall be resolved by binding arbitration to be administered pursuant to and in accordance with the American Arbitration Association.

When a dispute arose between Port Erie and the other shareholders, Uptown filed a demand for arbitration with the American Arbitration Association ("AAA"). In September 2003, Port Erie sent a letter to the AAA, pursuant to AAA Rule 10, asking that

2

the arbitration be held in Erie, Pennsylvania.[1] Uptown objected to Erie, and the AAA requested that both sides submit locale requests by October 7, 2003 so that the AAA could determine the locale in accordance with its procedures. The parties agreed to extend the deadline until October 15. Port Erie did not file a response to the AAA's request but, instead, on October 15, filed, in the Court of Common Pleas of Erie County, a complaint for a declaratory judgment and a motion to stay the arbitration proceedings. Port Erie sought a declaration that Uptown had no actionable claim, that jurisdiction and venue for the dispute lay with the Court of Common Pleas of Erie County, and took the position that "[t]here [was] no agreement between Uptown, Kapfer, Gleeson, Bruno, and Port Erie to arbitrate the disputes . . . under the rules of the AAA."

The AAA received a copy of Port Erie's motion to stay the arbitration, but the case manager determined that the arbitration would proceed absent a court-ordered stay. Shortly thereafter, on October 24, 2003, Port Erie wrote to the Judge assigned to the case to request that he "act upon the motion to stay without further delay." That same day, the Judge entered an order staying the arbitration for sixty days, and ordering Uptown to file a

---

[1] Rule 10 of the Commercial Arbitration Rules and Mediation Procedures provides:
 The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

response to Port Erie's motion within twenty days. Uptown's response was to remove the case to the United States District Court for the Western District of Pennsylvania.

Shortly thereafter, Uptown moved to transfer venue to the Southern District of New York. The District Court denied the motion. Port Erie filed a motion for summary judgment, opposed by Uptown, which cross-moved to compel arbitration. The District Court denied Port Erie's motion for summary judgment and granted Uptown's motion to compel arbitration. Pursuant to the terms of the Federal Arbitration Act ("FAA"), the District Court ordered the arbitration to proceed within its judicial district–the Western District of Pennsylvania. 9 U.S.C. § 4. Uptown moved for reconsideration, asking that the District Court (1) delete the part of the order compelling arbitration in the court's judicial district, and (2) "insert language in th[e] Judgment to refer the determination of proper venue of the arbitration hearings to the [AAA]." (App. at 683.) The District Court denied the motion to reconsider, and this appeal followed.[2]

## II.

Uptown raises two issues on appeal. First, it contends that Port Erie should be judicially estopped from denying the authority of the AAA to fix the locale of the arbitration. The District Court rejected this argument, and we review that decision for abuse of discretion. *Montrose Med. Group Participating Savings Plan v. Bulger*, 243

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(2). We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3).

4

F.3d 773, 780 (3d Cir. 2001). Second, it argues that the District Court erred as a matter of law when it determined that the FAA compelled it to order arbitration to proceed within its own judicial district. Because this raises a question of statutory interpretation, our review is plenary. *DirecTV Inc. v. Pepe*, 431 F.3d 162, 166 (3d Cir. 2005). We address these issues in turn.

### A.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting inconsistent claims in different legal proceedings." *Mintze v. American Financial Services, Inc.*, 434 F.3d 222, 232 (3d Cir. 2006). "Its purpose is to protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'" *In re Armstrong World Indus.*, 432 F.3d 507, 517 (3d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

The Supreme Court has identified three factors that should inform a court's decision to invoke the doctrine: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51. We have held that "[t]hree requirements must be met before a district

5

court may properly apply judicial estoppel." *Montrose Med. Group Participating Sav. Plan*, 243 F.3d at 779.

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith–i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Id.* at 779-80.

Uptown claims that the inconsistency requirement is satisfied because Port Erie initially took the position, in its September 2003 letter to the AAA, that venue was an issue to be decided by the AAA, and later took the position that the court should determine the proper venue. We disagree. Port Erie's September 2003 request to the AAA to fix the locale in Erie, Pennsylvania is not "irreconcilably inconsistent" with its later position in this litigation. Port Erie's position, from the beginning, was that Uptown had not framed an arbitrable dispute. It was not inconsistent for Port Erie to argue this position while hedging its bets by registering a locale request with the AAA in case the dispute was ultimately deemed arbitrable.

We note also that judicial estoppel is an extreme measure, which "is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citations and internal

6

quotations omitted). It "should only be applied to avoid a miscarriage of justice." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003). The positions taken by Port Erie certainly do not rise to the level of a "miscarriage of justice," or "playing fast and loose with the courts." Accordingly, the District Court did not abuse its discretion by rejecting Uptown's argument for judicial estoppel.[3]

### B.

Uptown next contends that paragraph 8 of the Operating Agreement, reproduced *supra* at 2, requires the locale of the arbitration to be fixed by the AAA, and that the District Court erred by ordering the arbitration to proceed in the Western District of Pennsylvania, contrary to this requirement. We agree with the District Court that "that provision simply describes who shall resolve a dispute arising under the agreement. It does not implicitly, much less expressly, represent an agreement by the parties that the determination of venue would be made by the AAA." (App. at 14.)

The FAA directly addresses whether arbitration could proceed in the Western District of Pennsylvania.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for *an order directing that such arbitration proceed in the manner provided for in such agreement*. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall

---

[3] Because we find that the first requirement for invoking judicial estoppel–inconsistent position–is not met here, we need not address the remaining requirements.

> make an order *directing the parties to proceed to arbitration in accordance with the terms of the agreement.* The hearing and proceedings, under such agreement, *shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphases added). In *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974), we held that, under the language of § 4, a district court lacks authority to order arbitration to proceed outside its own judicial district. In *Econo-Car*, an agreement between the parties specified New York City as the locale for arbitration, but the plaintiff filed to compel arbitration in the United States District Court for the Virgin Islands, where the action was brought. The District Court ordered arbitration to proceed in New York, as per the terms of the agreement. We determined that "the district court erred in ordering arbitration to take place in New York City," reversed the judgment of the District Court, and dismissed the case.[4] *Id.*

We did not reach the issue of whether the District Court for the Virgin Islands

---

[4] We noted that a "perplexing dilemma" arises when an agreement "provides for arbitration outside of the district in which the petition [to compel arbitration] is filed." *Econo-Car*, 499 F.2d at 1394. We acknowledged the tension between the first part of § 4, which authorizes a party to request, and a court to issue, an order requiring arbitration "in the manner provided for in such agreement," and the second part of § 4, which provides that the arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." *Id.* ("[A] district court might not be able to order arbitration strictly in accordance with the terms of the agreement, as one portion of Section 4 seems to require, without contravening a second portion of Section 4.") We ultimately concluded, however, that "[w]hile any directive in Section 4 that arbitration be conducted according to the terms of the agreement is implicit at best, the requirement that arbitration take place in the district court where the petition is filed is clear and unequivocal." Accordingly, we directed courts to "heed the unambiguous statutory language limiting the district court's power to order arbitration outside of the district." *Id.*

could have compelled arbitration *in its own district*. We noted, however, that a party seeking to compel arbitration in a district other than the one selected "may well be unable to secure an arbitration order in such district court." *Id.* Following *Econo-Car*, the majority of district courts to address the issue before us have held that they lacked authority to compel arbitration at all, even in their own districts, when the agreement specifies that arbitration is to take place in a different venue. *See Feinberg v. Association of Trial Lawyers Assurance*, No. 01-6966, 2002 U.S. Dist. LEXIS 21518, at *7-8 (E.D. Pa. 2002); *Poole v. L.S. Holding, Inc.*, No. 2001-57, 2001 U.S. Dist. LEXIS 16600, at *5 (D.V.I. 2001) (unpublished); *General American Life Ins. Co. V. Int'l Ins. Co.*, No. 98-5588, 2000 U.S. Dist LEXIS 22092, at *17 (D.N.J. 2000) (unpublished); *Bosworth v. Ehrenreich*, No. 93-2246, 1993 U.S. Dist LEXIS 19291, at *16-17 (D.N.J. 1993); *Alpert v. Alphagraphics Franchising, Inc.*, No. 89-5040, 1990 U.S. Dist. LEXIS 2644, at *13-14 (D.N.J. 1990). *But see Steedle v. Zimmerman*, No. 02-CV-0089, 2002 U.S. Dist. LEXIS 11939, at *6-7 (E.D. Pa. 2002) (ordering arbitration to proceed within the Eastern District of Pennsylvania despite language in the arbitration agreement specifying that arbitration should take place in New York).

The District Court did not err in ordering the arbitration to proceed in the Western District of Pennsylvania in accordance with the unambiguous requirement of § 4 that the arbitration "shall be within the district in which the petition for an order directing such arbitration is filed."

9

## III.

The order of the District Court will be affirmed.